Good morning. The next case in our docket is United States v. Bonilla-Romero. Mr. Kelsey. Chief Judge, Judges, may it please the Court. My name is Cook Kelsey. I'm here for Appellant Jose Bonilla-Romero. This is a simple case. Everybody agrees that Mr. Bonilla-Romero was charged under a statute that the Supreme Court held was unconstitutional eight years ago. Since then, the government has accepted that reality and left it to Congress to fix. In fact, at the beginning of the case, the government raised the issue that there was no, quote, is that my job or is that Congress's job? The government replied, it will be Congress's job to ultimately determine what the appropriate sentencing range is. Your Honors, today the government is asking the Court to determine what the appropriate sentencing range is for first degree murder. Now, this would not only violate separation of powers and directly interfere with pending bipartisan legislation in Congress, it would violate a basic covenant between the government and people. The government says we will not take your liberty or your property unless you've been given notice before the sentence of the sentencing range clearly and unambiguously in the statute, in the indictment, the arraignment and presentencing under the rules. Rule 11 expressly says the court must inform the defendant of and determine that the defendant understands any mandatory minimum penalty before accepting a plea. I cannot describe how impossible it is to meaningfully participate and for a defense attorney to advise a client whether to cooperate, enter a plea agreement, go to trial, et cetera, when the sentencing range is plainly unauthorized. I think the previous counsel put it best at a hearing on April 3rd in 2015, and these words ring exactly true for my predicament now. Counsel asked the court, what is the statutory minimum? As a defense attorney, it is my obligation to give that to the client, and I'm left here having to advise the client that the law is not the law. The court may have some other procedure that I don't know that may apply or not apply whose guideline range may or may not be applicable, and that affects every decision, every counsel, every communication I have with my client. I cannot help my client make a decision. I don't understand why the lesser included offense of second degree murder, why wouldn't you advise your client about that? It's the next level down. It's a lesser included offense. Your Honor, I think that would be appropriate advice preparing for trial. As Your Honor knows, under the rules, lesser included offenses may be presented in a jury instruction after trial. So at the plea stage, the lesser included offense doctrine is not applicable. I understand that the government would like to import that into this stage. I don't think that issue resolves due process at all. I think it's even deeper than due process. It's such a fundamental deprivation of due process. This is about separation of powers and the ability to initiate the prosecution of an offense where there is no statutorily authorized sentence. And I think what the government is trying to do is to import a type of severability that doesn't exist. Combine that with the lesser included offense doctrine, what is essentially an equitable power of the court. It's telling the court you have the power to fix a statutory gap and that power, it doesn't exist in our system. I believe the closest the courts have had is an ancient equity of the statute power to fix a statutory gap like this by inserting language. So are you saying that in the cases where juveniles were convicted of unconstitutionally convicted and then when the case was remanded, the sentence was converted to life sentence with possibility of parole, you're saying all those cases were wrong? No, Your Honor. I think the under seal court correctly analyzed those cases which are under Montgomery and that's a retroactive application of this substantive rule. And so the whole issue of due process would not apply because Miller had not been instituted yet. So those are sentences that defendants had received before Miller when there was no question. The statute said what it said and so now Miller has actually, it's clarified the meaning of the statute as pertains to juveniles. And so, I mean, I think Justice Scalia also addressed this and appropriately that due process could not have been a concern. This was his concurrence, I think, in Miller. There's no way someone would speculate about a future Supreme Court, 100 years in the future, you know, ruling on that issue. So that's how we distinguish all of those retroactive cases. In this case, I mean, the government is trying to turn the entire process upside down. And so I think it's interesting what the government is doing. It's so completely outside of anything that we have encountered as defense attorneys and that courts have done for hundreds of years. Judge Smith addressed a very similar type of analysis that this court has done in a bankruptcy case where he said equity of the statute, the ability to fix a perceived gap, has been dead letter since the beginning of the 20th century. The Supreme Court's most recent use and rejection of this was in 1955. I don't understand. I'm just trying to apply that logic to the courts where in the case that went up, the juvenile was convicted of a crime that was punishable by life imprisonment without possibility of parole. And the gap was fixed by converting the sentence to life with possibility of parole. Isn't that the same gap that was fixed by a court? What's the difference? Well, I think Under Seal expresses it better than I could. So those cases which required life imprisonment prior to Miller, because of that procedural difference, it means that it does not give rise to a due process problem in the instant case. Because at the time that, in this case, Mr. Bonilla-Romero committed his crime and was prosecuted for, actually, in those cases, the defendants at the time they committed their crimes and were prosecuted, the statute had a functioning penalty provision. Only later did any constitutional prohibition come into light. I'm saying in the very case where they said, you cannot sentence a juvenile to this, and they fixed the gap by saying, OK, we're going to commute the sentence to life with possibility of parole. I think that's appropriate. I think it's a not entirely unanimous agreement by the Supreme Court about how to apply retroactive constitutional rules under Teague. And Justice Scalia was doubtful about that ability. And that's what the court further addressed in Montgomery, is this retroactive application. And we think that under seal is correct, that at this point, the government knows what the law is. It's very clear. It's been clear for a decade now. And until this case, the government has honored that, has honored this ruling. There is no statutorily authorized penalty. And so, I mean, they have an absolutely valid charge that they can bring. And there's already a charge that comports with Miller that's pending in Texas for first degree murder. And so, you know, we believe that the government should, or that the court should remand and the government has a wide open highway to proceed. But do you want us to rule, Mr. Kelsey? I believe you asked how how we would like you to rule. Yeah. We would ask that the court vacate the sentence and remand for the district court to allow the government to replete or however the government would like to proceed. Again, there is a valid constitutional pending indictment for first degree murder in Texas state court that we don't have any disagreement over the validity of that. But we believe that it is appropriate for the court to vacate. And you say remand for the government to do. So if the government would reindict under second degree murder, is that what you're saying? What is it? I understand about the state court that the federal government can't control the state court proceeding. So what? What is it that this plaintiff, the United States, can and should do in your view? So, Your Honor, I don't want to assume what the government would do in this case, but I think the most obvious course of action, which it's very inexplicable that it hasn't been done. A previous panel on interlocutory appeal basically asked many times, you know, why, why don't you proceed with with this lesser included offense of second degree murder, which until this case, the government has accepted that that's a proper charge for a juvenile for juvenile murder in federal courts. Now, the sentencing range is quite broad in that. So you're saying we can remand to permit the government, if it wishes to proceed on something less than first degree murder. Obviously, they don't have to. I'm not saying that, but they could. That's correct, Your Honor. I think you would have to vacate the conviction, not just the sentence. You said vacate the sentence. That's correct, Your Honor. Vacate everything, send it back, and the government will just do over. That's what you want. That's correct, Your Honor. Do over with first degree murder over in the bucket, in a trash can. Right. I mean, I think they're well versed with the case at this point and repleting it would not be a huge burden. Or they could do nothing. And there's this pending indictment. Are you asking us to withdraw the plea of guilty? Yes, Your Honor. We believe we have a right to withdraw under Rule 11A2. We raise the issue plainly at every stage, including at the at the rearrangement. And the government did not object. We had an agreement that we would appeal this issue as the panel on interlocutory appeal acknowledged and advised us that we had raised an important constitutional issue to be addressed by this court. And so we have a right to withdraw that plea and and that we could go to trial. But, you know, the government can can replete. It's really the government's decision to make. Obviously, you know, no one is is going anywhere in the meantime. And those options are they're all on the table. And this third option that the government is asking the court is to rewrite the law and essentially the Constitution to tell district courts they have this power to not only declare laws unconstitutional, but to fix them. That would that would cause a complete reversal of severability. And it is in much more complex cases, you know, such as Obamacare or the bankruptcy case, Judge Smith. Let me just understand. You want us to vacate? You want to vacate the sentence? You withdraw? The client withdraws a plea of guilty. The government re-indicts for second degree murder and he gets the same sentence? The same sentence? No, no, Your Honor. You know, we we would have the opportunity to do our job as defense lawyers. There's the plea bargaining process. There's different guidelines. I mean, I understand the district judge has discretion applying the different guideline for second degree murder, which she did not apply. So it's not like we have we haven't gone down that route. And more fundamentally, what is really at issue here is our client was deprived of participating, of being informed. So even if somehow he ends up with the same sentence, which is totally speculative at this point, he has been deprived of due process. And it's leaving a precedent, which is extremely problematic on a constitutional level. And I'll yield now.  Good morning. May it please the Court. Anna Kloery on behalf of the United States. Just a quick side to clarify the procedure here. So the defendant has not challenged the knowing involuntary nature of his guilty plea. So there's no basis for this court to reverse that. What would need to happen is this court would need to find that the statute is unconstitutional and there's no other principle of severability that can make it constitutional as applied. And then it would need to dismiss the indictment. And that's how the defendant would be able to get back to square one, if you will. Now, the reason that this court should not do that is because the district court properly applied the principles of severability to exercise the as applies. I'm sorry. Yes. Tell us why we're here. I mean, why y'all didn't just pursue the second degree murder after all of the back and forth about we know there's a problem here. And our prior panel saying there's a problem here. Why are we here? So this is a first degree case. This is a premeditated murder on federal land with a transnational gang involved using a machete and a baseball bat. This is everything that you would need to qualify for first degree. And so our office made the decision to go forward on a first degree charge because this is a first degree case. OK. But clearly the second degree is a lesser included offense. You would not have this issue. You could still come forward in the sentencing hearing with all of the ugly facts to argue for life with it with parole, possibility of parole. And I don't I guess I'm still not understanding. I'm not saying you don't have the facts for first degree murder, but you have this problem that he was three months shy of 18 and under Supreme Court precedent, not subject to either the death penalty or life without parole. Yes, your honor. The. So I think a few things. One second degree has a guideline range that's actually less than first degree. So there's that issue there. Again, looking at the facts of the case, this is a first degree. This is a first degree case. But also, as we were looking at charging this case and we moved to transfer the defendant, we did look at the at the Supreme Court and the Fifth Circuit case law in terms of severability. And we found that there is a there is a fix to this problem, a legal, valid constitutional fix that we can move forward with. And moving through to before I get back to severability to the defendant's claims of due process. The United States and the district court have been very clear with the defendant as to the principles of severability that we would apply, and that would be going forward and what the penalty range would be going forward with this indictment. Since 2015, since the we moved to transfer the defendant to adult status, the defendant has known what the penalty would be. And in fact, he has pled guilty twice and said he understood the penalty range to it as well. He may not have agreed with it, but he did say that he understood it and that they would challenge the legality, if you will, at a later date. So there's nothing about his plea that is unknowing or involuntary regarding the penalty. Everything complies with Rule 11 in terms of stating the maximums. And just as, for example, if we had moved forward with second degree and the penalty was any term of years up to and including life, defense counsel would have the same advice, whatever that may be in terms of how to look at the possible penalties, whether to go forward with a plea or trial or what have you. So I think that the due process is a bit irrelevant here because the defendant has always known and always had notice as to what the possible penalty would be here. The court and the prosecution has always been very clear about that. Going back, though, to the issues of severability, this court has said in Booker. So in United States v. Booker, the Supreme Court found that the mandatory provisions of the sentencing guidelines was unconstitutional. And then they looked at it and they said, OK, so these portions are unconstitutional. What do we do? How can we fix this? Can we fix this? And they set forth a test. And the issue was, can the offending portions be severed? And they set forward three parts they needed to look at. You were supposed to retain the portions that were constitutionally valid, capable of functioning independently and consistent with Congress's basic objectives in enacting the statute. And by severing out the mandatory minimum penalty here for first-degree murder, the severability analysis meets all three of those requirements here. So when we look through the severability analysis, there's a couple of issues that the defense counsel has raised in terms of filling in the gap. I just ask this. I want to go back to this. If we went with the defendant's arguments, vacated the indictment or whatever we did, the technical piece of that, send it back. Y'all could charge him with second-degree murder, either try it or get a guilty plea. He could still be sentenced to life, but just with the possibility of parole. And the fact is he wasn't sentenced to life. He was sentenced to 460 months, which for most people probably is a life sentence. But when you're 20 years old or whatever, when you're sentenced, 460 months is not a life sentence. And he could still get out and be roughly my age when he gets out. And I like to think I have a few more years left. So he did get a benefit from his plea deal that he would not get if he went back and y'all just started over, tried the case. Of course, he might win the case. I understand that. Tried the case. And if you succeeded, the judge could sentence him to life with the possibility of parole, and he could then serve a life term because he doesn't have to be given parole. Right? So, yes, parole isn't an issue for the federal system. He could get good time credit, and that would possibly lessen it. Parole is only an issue in the state system. So he has his sentence of 460 months, and he might get credit for good time behavior, but his sentence would be 460 months. As to the rest of your hypothetical, yes, the same thing could apply because the guideline range for second degree, if everything were to go back and we were to proceed on second degree, it would be any term of years up to and including life. And that would be a decision that the district court would have to make, depending on if there was a plea, if there was a trial. I mean, I know that year sentences are clear in federal, but you're saying even a juvenile who gets a life sentence in federal can't get out? Ever? Well, so. Short of the president, you know, granting. Yes, so Miller makes clear that you can still sentence juveniles to life imprisonment. However, you have to take into consideration all of the Miller factors in addition to the 3553A factors. So Miller doesn't prohibit that. It's simply the court simply saying that automatically is what exactly. It's still the equivalent of that, but just not automatic, like in this first degree murder statute. We have exactly, but I think that's why severance. I understand that. I guess I'm just looking at this with or without parole. I just wanted to be clear on that. You're saying, I mean, because I want to understand. You know, be careful that you might get what you asked for kind of thing, because here he could end up in prison for life. Whereas now, under the current sentence, he will get out. I mean, I understand you can die young, but in normal life expectancy, he would get out. Yes. So right now his sentence is 460 months. If this case were to be reversed and we proceeded on first degree, the option would be sent would be any term of years up to and including life. And so he could get a higher sentence, depending on how it plays out with trial and various other things. Yes. I'm sorry, Your Honor. Did you have a question? You said if we were to vacate, you would indict him under first degree. My apologies. Yes, that was a misstatement. So if we were to proceed under second degree, the punishment range would be the same here. But I think it's important to note that what we're asking the court to do is or what the district court did do is not just substitute wholesale the punishment for second degree here. I understand that severing the mandatory minimum from the first degree murder of four imprisonment for life results in the same punishment for second degree. But that's we're not actually requesting or we didn't actually suggest. And the district court didn't find that they were he was wholesale substituting the second degree punishment in for first degree. So the punishment make more sense statutorily because the Fourth Circuit case involved sort of two separate statutes. They didn't want to converge. But here we're in the same statute. And so if we're trying to look at congressional intent and we're trying to just cut something and so forth, like you do when you sever in accordance with Supreme Court precedent. Wouldn't that because they're all in the same statute make sense? So I think it is one way to do it. And I think it can make sense. But I think it is there is less of a tinkering, if you will, with the statute. If you look at imprisonment for life and you stay within the first degree murder section. So it says whoever is guilty of murder in the first degree shall be punished by death or by imprisonment for life. So imprisonment for life is actually the floor and the ceiling. Right. So it's the maximum and the minimum. If you stay within first degree and simply excise out the minimum, you stay within that statute. You exit. You excise the minimum necessary to make the statute constitutional. And it just so happens that the punishment range that you end up with is the same as second degree. But it really doesn't matter what the second degree punishment would be. Life is only the maximum and not the minimum. Correct. And I think that that is a. When you look at Booker, Booker clearly says you excise the minimum amount necessary to make the statute constitutional. And I think that this conceptually does that more so than substituting the term of imprisonment for second degree within the first degree. Realizing that I do realize that all roads lead to Rome and you end up with the same thing here. But I think conceptually it is a different thing here. What we are asking is and what the district court did is simply excise the mandatory minimum there. And when you do that, it is in line with Miller. It allows the district court discretion. It still keeps in play the maximum sentence possible that Congress intended for first degree murder. And yes, there is a little bit of what would Congress intend to do here in light of Miller. But that's exactly what Booker says that we should do. Realizing that something is unconstitutional, you look at the statute and what remains. Is that in line with Congress's intent in enacting the statute? And just to touch on, I know the defendant relies a lot on United States v. Evans. There, there were two crimes. One had a punishment, one didn't. And so the Supreme Court said you can't just substitute in a punishment for one where there wasn't a punishment listed. And I think here that this is something completely different because we do have articulated punishments from Congress. And we're staying within those. We're not guessing at what they would like it to be. We're keeping in line the maximum possible term of imprisonment. Unless there are any further questions, I will rest on my brief. Mr. Kelsey? Thank you, Your Honor. Yes, I would address a couple of points. Regarding the court's procedural options, I wanted to clarify that if the court does not agree with the government's severability analysis and determining what the sentence will be, the court should vacate. If it doesn't, and if the court affirms or agrees with the government's analysis and saying that that's a valid type of interpretation or amendment of the statute, the court should also vacate so that Mr. Bonilla can withdraw his plea under Rule 1118. I agree with your argument that he didn't know what he was pleading to. I mean, all of this has been, you know, chapter after chapter going over this and over this and over this. So this isn't like – and it's – I mean, he benefited from the plea because, as I said, with or without parole, which I understand parole is not really the term in federal courts. It's in state courts. But whatever you say about life, when you're, like, 20 years old when you get sentenced, 460 months is far less than life using an ordinary life expectancy, understanding people can die young and they can live very long. Right? Your Honor, I would – It's not like he didn't understand and there was some sort of statutory minimum he was unaware of and he got sentenced to that. I mean, those are the cases we get where the person didn't understand or he didn't understand what the range was or he was lied to about the sentencing guidelines or misunderstood. Here he knew he could get life, whatever you want to call it, life-ish, and he got less than that based on the plea. Your Honor, I would just say that we told him that we don't know, and we still don't know what the statutory minimum is. And whether it possibly turns out that at one extreme end of this incredible, huge difference in statutory ranges between first and second degree murder, which has been, you know, determined by Congress for 200 years that is being altered, that he did not know and we did not know. And even if it comes out at the end, possibly in some speculative way that the sentence ends up at the same, he has been deprived of a valuable civil right. And that is – How do you address Booker? I think Under Seal addressed Booker quite well in a footnote. The basic principle that the statute does not operate independently without a penalty is, I think, well established. The statute and the offense are inextricably intertwined. You can't sever them one without the other. It makes no sense. And as far as is Booker doing something differently, there's a footnote in Under Seal that explains that. And I do see my time is up. Chief Judge Owen, can I ask a question? Sure. So I understand what you were saying about he doesn't know what the statutory minimum is. But if we use either interpretation, going with the second degree or excising the minimum from the first degree, there is no statutory minimum and statutes don't have to have a statutory minimum. So he benefits from that. This isn't the circumstance where he thought the statutory minimum was five and it turned out to be 15. Those are the kinds of plea deal cases we get where there's a problem. But here, if he thought it was life and it's zero, that's a benefit to him. He didn't get life. He got 460 months, which is a long time, but it's less than life when you're his age. Well, Your Honor, I would say that his harm was that he was facing what we showed him on the statute was a minimum of life. And then we showed him another judge's opinion, and we told him we don't know. And so he was facing a decision in a situation where he was not able to make an informed plea. And so it was like a situation of duress. We basically said, we don't know what the law is, and here's a plea, and you can take it or not. And so he was actually realistically afraid, and especially because the judge misstated Miller at the hearing by saying that it would be unconstitutional for the judge to sever the juvenile statute. I mean, it was very confusing. And so he realistically believed, well, this could be a minimum, according to the statute. Like everybody, like the Houston police, the Walker County police, from the very beginning, they all look at the statute, and we trust that. And we could not make sense of the judge's redlined version. And so it appeared to be a mandatory minimum or not. He did not have any opportunity to make an informed plea and to participate in any way meaningfully in the process. And so that's all we're asking, is that he be given that most basic due process civil right to make an informed plea or, you know, to... And basically, that's it, Your Honor. It might not sound like it's important. At the end of the day, if there's some possibility he gets the same sentence or less sentence, a lesser sentence or more. But I don't think that's the key issue that, you know, the Fifth and the Sixth Amendment address. It's the right in this country to be informed before the government takes your liberty or property. So I apologize for the long answer. We ask the court to vacate and remand. Thank you. Thank you. Thank you, counsel. We appreciate your arguments. Your case is under submission.